UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| PETER DIPIETRO,<br><br>    Plaintiff,<br><br>v.<br><br>LAKE GARRISON, INC., *et al.*,<br><br>    Defendants. | HONORABLE KAREN M. WILLIAMS<br><br><br>Civil Action<br>No. 1:23-CV-02714-KMW-SAK<br><br><br>**MEMORANDUM OPINION** |

**WILLIAMS**, District Judge:

## I.    INTRODUCTION

Plaintiff Peter DiPietro ("Plaintiff"), proceeding *pro se*, brings this action against various defendants for their involvement in an ongoing ejection action proceeding in state court. Specifically, Plaintiff alleges that Lake Garrison, Inc.—a private entity that oversees and manages a seasonal resort community located in Elk Township, New Jersey ("Lake Garrison")—violated various constitutional, statutory, and common law rights when it initiated legal proceedings to eject him from a seasonal cottage, which he was allegedly occupying during the resort's offseason.[1] Plaintiff also brings suit against Lake Garrison's legal counsel in the state court action, Hoffman DiMuzio.

---

[1] Though Plaintiff also brings this action against Lake Garrison's president and board of directors, the Court shall refer to these defendants collectively simply as "Lake Garrison."

1

Presently before the Court are the Motions of Lake Garrison and Hoffman DiMuzio (together, "Defendants"), both of which seek the dismissal of this case pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' Motions are granted.

## II.   <u>BACKGROUND</u>[2]

Lake Garrison is a recreational resort community that was established in the 1930s as a private lake, but was later converted into a community of stockholders—Lake Garrison, Inc.— consisting of 110 seasonal resort cottages spread out over 116 acres of land. *See* ELK TOWNSHIP, N.J., CODE § 96-75(A). While each of the cottages are purchased and owned by individual stockholders, Lake Garrison owns all of the real property, including the land on which the cottages rest—"a unique ownership structure requiring a unique regulatory program." *Id.*

In or around August 2021, Plaintiff purchased one of these seasonal cottages directly from its prior owner and Lake Garrison stockholder, Joseph Ramowski (the "Property"), which was then allegedly transferred to the "Peter D. DiPietro Foreign Trust." The following year, however, Lake Garrison initiated an action against Plaintiff in the Chancery Division of the Gloucester County Superior Court, seeking to have Plaintiff ejected from the Property (the "Chancery Action").[3] Among other things, Lake Garrison alleged that Plaintiff's purchase of the Property occurred without its knowledge and in violation of certain corporate covenants restricting the transfer of Lake Garrison stock. Lake Garrison further alleged that although it was initially unaware of

---

[2] The factual and legal posture of this case is not entirely clear on the face of the pleadings filed to date. In order to provide meaningful background to this dispute, as well as to ensure that Plaintiff's pleadings are afforded a meaningful opportunity to be liberally construed in light of his *pro se* status, the Court takes judicial notice of various matters of public record, including the state court proceedings. *See McDonald v. Jones*, 427 F. App'x 84, 85 (3d Cir. 2011) (observing that courts may judicially notice matters of public record).

[3] *See Lake Garrison, Inc. v. Peter D. DiPietro*, No. GLO-C-29-22 (N.J. Super. Ct. Chanc. Div.).

Plaintiff's purchase, it learned in the winter of 2022 that Plaintiff was occupying the Property on a continuous basis during the resort's six-month offseason and refused to leave—a violation of its Rules and Regulations, as well as local zoning regulations. *See id.* § 96-75(B)(1).

### A) First Removal Attempt

A week after Lake Garrison filed its complaint in state court, Plaintiff sought to remove the Chancery Action to federal court.[4] Specifically, on August 31, 2022, Plaintiff filed a "Notice of Removal" in this Court, as well as an "Application to Enter This Court Under the Court of Law and the Court of Equity." In addition, Plaintiff also purported to assert a host of counterclaims against the Defendants in this case, claiming that they filed the complaint in the Chancery Action with "unclean hands" and "with a laundry list of false and misleading statement[s]."[5]

Thereafter, on September 4, 2022, the Honorable Renée M. Bumb issued an Order to Show Cause as to why the Chancery Action should not be remanded to state court for lack of subject matter jurisdiction. In response, Plaintiff filed a "Notice of Liability & Common Law," as well as a "Show Cause Removal to Kings Bench Jurisdiction." Ultimately, Judge Bumb issued an order withdrawing Plaintiff's Notice of Removal and closing the case. And although Plaintiff subsequently appealed Judge Bumb's order, that appeal was later dismissed by the U.S. Court of Appeals for the Third Circuit on January 20, 2023.

### B) The Instant Action

Following the rejection of Plaintiff's removal attempt, the Chancery Action proceeded in state court before Judge Robert G. Malestein. However, on May 5, 2023, Plaintiff returned to this

---

[4] *See Lake Garrison, Inc. v. DiPietro*, No. 1:22-CV-05347-RMB-MJS (D.N.J.).

[5] *Id.* (ECF No. 1 at 5).

Court once more and initiated the instant action by filing a Complaint, which was superseded ten days later by the filing of an Amended Complaint. (ECF Nos. 1, 4).[6] Therein, Plaintiff again accused Defendants of making false and misleading statements in the Chancery Action and conspiring to deprive him of his rights and property. (ECF No. 4 at 2). In addition to seeking millions of dollars in compensatory and punitive damages, Plaintiff also requested that the Court immediately issue an order to "restore" the Property to his possession. (ECF No. 4-1).

Plaintiff never served any of the named defendants with either the Complaint or the Amended Complaint. However, for four months, Plaintiff filed voluminous materials and motions on the docket in which he repeatedly asked the Court to intervene in or otherwise halt the Chancery Action. For example, shortly before a trial was scheduled to take place in state court, Plaintiff filed two "Notices of Removal" in this case, again purporting to remove the Chancery Action to this Court based on the "corruption" of the Gloucester County Superior Court. (ECF Nos. 13, 17). Citing to these more recent removal attempts, Plaintiff further asked this Court to restrain the Chancery Action from moving forwarded on the basis that the state court had been divested of jurisdiction (ECF No. 14). However, none of these filings removed the case to this Court, and the Chancery Action proceeded.

A trial took place in the Chancery Action on August 29, 2023, in which all parties participated. Following the trial, Judge Malestein entered a final judgment in favor of Lake Garrison and ordered that Plaintiff be ejected from the Property on October 31, 2023. In addition, Plaintiff was also ordered to make all concerted and reasonable efforts to sell the Property by May 1, 2024. Judge Malestein continues to oversee the execution of the judgment and order.

---

[6] These pleadings designated as plaintiffs Michael H. Roberts—a non-attorney who purported to bring suit on behalf of the Peter D. DiPietro Foreign Trust—as well as Plaintiff in his individual capacity.

Following the entry of judgment, Plaintiff proceeded to file in this Court a motion to vacate Judge Malestein's order, again insisting that the state court had been divested of jurisdiction based on his prior removal.[7] (ECF No. 28). In addition to requesting that his allegations be referred to the U.S. Attorney General for a criminal investigation, Plaintiff has also filed four Motions for Summary Judgment, in which he asks that this Court find Judge Malestein's Order "null and void." (ECF Nos. 31–33, 38).

### C) Defendants' Motions

After again being advised by the Clerk of Court that he still had not effectuated proper service of process on any of the named defendants (ECF No. 24), Plaintiff proceeded to file a Second Amended Complaint on September 18, 2023 (ECF No. 25). The Second Amended Complaint appears to be substantively similar, if not identical, to Plaintiff's prior pleadings.[8]

It is still unclear as to whether the Second Amended Complaint has been properly served on any of the defendants named in this suit. Regardless, the Defendants here have entered their appearances and separately filed Motions to Dismiss the Second Amended Complaint. (ECF Nos. 42, 48). Therein, Defendants submit that Plaintiff is attempting to have this Court overturn the rulings of the state court, interfere with the ejection process, and relitigate claims and defenses that

---

[7] The Court reiterates that the Chancery Action was never "removed" to this Court due to, among other things, the lack of federal subject matter jurisdiction at its inception. *See* 28 U.S.C. § 1441(a); *see also 500 Park Ave. E.O., N.J. Inc. v. Dey-El*, No. 18-13048, 2018 WL 4110945, at *1 (D.N.J. Aug. 28, 2018) (rejecting *pro se* plaintiff's attempt to remove state court eviction action to federal court due to lack of subject matter jurisdiction). The fact that Plaintiff purported to assert federal counterclaims against Lake Garrison is of no consequence. *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) ("Section 1441(a) thus does not permit removal based on counterclaims at all, as a counterclaim is irrelevant to whether the district court had "original jurisdiction" over the civil action . . . . as defined by the [original] plaintiff's complaint.").

[8] Although the Second Amended Complaint does not reflect any noteworthy change, it does appear to have removed Michael Roberts as a plaintiff, with all claims now being asserted solely by Plaintiff in his individual capacity, as well as in his capacity as "successor trustee" of the Peter D. DiPietro Foreign Trust.

have already been presented to the state court. To this end, Defendants request that this Court abstain from adjudicating Plaintiff's claims and to dismiss them accordingly.

## III.   LEGAL STANDARD[9]

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the

---

[9] Though the Court recites the dismissal standard under Rule 12(b)(6), it notes that there is a lack of consensus among district courts as to whether abstention is considered under Rule 12(b)(1) for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a claim. In any case, the distinction appears to be insignificant given the prudential concerns underpinning abstention, as well as for the fact that courts typically permit parties to raise abstention challenges under either or both. *See, e.g.*, *Tobia v. Lakewood Bd. of Educ.*, No. CV 16-4850, 2017 WL 1206010, at *3 (D.N.J. Mar. 31, 2017).

line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

## IV.   DISCUSSION

The primary question raised by the pending Motions is whether the instant case is an improper attempt by Plaintiff to have this Court interfere with and overturn the state court proceedings. The Court finds that it is and concludes that it must abstain from considering or adjudicating Plaintiff's claims.

"Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or agency will have the opportunity to decide the matters at issue." *Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 303 (3d Cir. 2004) (quotation marks omitted). Against the backdrop of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given [to] them," it has been recognized that abstention is appropriate "only under certain limited circumstances." *Williams v. Gov't of Virgin Islands Bd. of Med. Examiners*, 360 F. App'x 297, 298 (3d Cir. 2010) (quotation marks omitted). Those circumstances "are loosely gathered under discrete concepts of abstention named after leading Supreme Court cases." *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 103 (3d Cir. 1999). Three such doctrines inform the Court's conclusion here.

First, in *Colorado River Water Conservation Dist. v. United States*, the Supreme Court explained that federal district courts may abstain from hearing cases and controversies under "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." 424 U.S. 800, 813 (1976) (quotation marks omitted). The threshold inquiry for determining the applicability of the *Colorado River* abstention doctrine is "whether there is a parallel state proceeding that raises 'substantially identical claims [and]

nearly identical allegations and issues.'" *Chambers v. Wells Fargo Bank, N.A.*, 726 F. App'x 886, 888 (3d Cir. 2018) (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005)) (alteration in original).

Second, there is the *Younger* abstention doctrine, which reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). *Younger* abstention may apply in one of three "exceptional" categories of proceedings: (1) "ongoing state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quotation marks omitted). Furthermore, the application of *Younger* is appropriate where there is a pending state proceeding that is judicial in nature; the proceeding implicates important state interests; and there is an adequate opportunity in state court for the plaintiff to raise constitutional challenges. *See Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo*, 339 F. App'x 232, 236 (3d Cir. 2009).

Lastly, there is the *Rooker-Feldman* abstention doctrine, which applies when the relief requested in federal court would "effectively reverse [a] state court decision or void its ruling." *Van Tassel v. Lawrence Cnty. Domestic Rels. Sections*, 390 F. App'x 201, 203 (3d Cir. 2010). To this end, the doctrine precludes federal consideration of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Importantly, the *Rooker-Feldman* doctrine encompasses claims that were not only actually litigated, but also those

8

that are "inextricably intertwined" with the adjudication by a state court. *See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003). In other words, a district court lacks jurisdiction over any claim so intertwined "even if it was not raised in the state court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 193 (3d Cir. 2006).

Here, Plaintiff's claims in this Court implicate all three abstention doctrines: (1) this case and the Chancery Action are parallel and substantially identical; (2) some matters in the Chancery Action are still ongoing; (3) Plaintiff's claims implicate important state interests—not just the ejection from and forced sale of a uniquely regulated property, but also the conduct of attorneys and judges in the state court, as well as the actions of a local corporation that oversees a recreational resort community; (4) the state proceedings have afforded Plaintiff an adequate opportunity to raise constitutional arguments, which were in fact made during the course of the Chancery Action; (5) to the extent that a portion of the Chancery Action has concluded, Plaintiff's claims here are "inextricably intertwined" with it. *See DiPietro v. Landis Title Co.*, No. 11-5110, 2012 WL 2116404, at *4 (D.N.J. June 11, 2012) (citing *Colorado River*, *Younger*, and *Rooker-Feldman*) (abstaining from adjudicating claims against defendants for their alleged involvement in an ongoing, state court foreclosure action); *see also Coppedge v. Deutsche Bank Nat. Tr.*, 511 F. App'x 130, 131 (3d Cir. 2013) (affirming abstention under *Younger* and *Rooker-Feldman* where plaintiff asked district court to enjoin and review state court proceedings concerning a writ of possession).[10]

___

[10] With respect to the application of *Younger*, the Court emphasizes that the Chancery Action is not an ordinary, commonplace ejection action. Rather, it is a proceeding that implicates important adjudicative acts—in particular the forced sale of the Property—which are uniquely in furtherance of the Chancery Division's ability to perform its core, judicial function. *See Shawe v. Bouchard*, No. 20-1770, 2021 WL 1380598, at *16 (D. Del. Apr. 12, 2021) (applying *Younger*) (finding that state court order implicated "unique concerns arising from the circumstances of the forced sale proceedings authorized by the Delaware General Assembly as part of the Chancery Court's core functions").

## V.   CONCLUSION

For the reasons set forth above, the Court abstains from hearing Plaintiff's claims, grants Defendants' Motions, and dismisses this case accordingly.[11]

Dated: April 30, 2024

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

[11] Dismissal of the remaining defendants is necessary for at least three reasons. First, many of these claims are factually and legally distinct from those addressed here against the moving Defendants. For example, Plaintiff has also asserted claims against various state and local law enforcement officials in connection with an unrelated criminal matter concerning the repossession of his motor vehicle. Plaintiff has also asserted claims against his prior counsel for, among other grievances, declining to pursue claims against irrelevant parties on his behalf. To the extent Plaintiff wishes to pursue any of these claims, he must file additional, separate complaints to be assigned new civil action numbers by the Clerk of Court. *See* FED. R. CIV. P. 20; *see also DiPietro v. New Jersey*, No. 1:19-CV-17014, 2019 WL 4926865, at *3 (D.N.J. Oct. 7, 2019) (dismissing Plaintiff's complaint under Rule 20 because it was "an amalgam of numerous claims against thirty-three defendants that are largely unrelated to each other"). Second, Plaintiff's claims concerning the state criminal matter have already been made part of a separate civil action, in which Plaintiff was expressly advised to petition the Court to reopen the matter if he wished to pursue those claims. *See DiPietro v. Elk Township Police Department*, No. 1:23-CV-00999-KMW-EAP. Lastly, most of these defendants, if not all of them, have still not been properly served with any of Plaintiff's pleadings to date. *See* FED. R. CIV. P. 4(m) (requiring dismissal of a complaint if it is not served within ninety days of filing).